# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| BERTHA I. SOLOMON MATHIS, | |
| Plaintiff, | No. C19-3035-LTS |
| vs. | **ORDER** |
| RICHARD W. LOZIER, JR., et al., | |
| Defendants. | |

_____

## I.  INTRODUCTION

This matter is before me on a motion to dismiss (Doc. No. 5) filed by defendants Geri D. Huser, Nick Wagner and Richard W. Lozier, Jr. (defendants). Plaintiff Bertha Solomon Mathis has filed a resistance (Doc. No. 6) and defendants have filed a reply (Doc. No. 13). I find that oral argument is not necessary. *See* Local Rule 7(c).

## II.  BACKGROUND

On December 5, 2017, Solomon Mathis and Stephen Mathis filed a Petition for Declaratory Order with the Iowa Utilities Board (the Board) requesting the Board declare that a certificate of public convenience, use and necessity pursuant to Iowa Code § 476A.2 was required for a MidAmerican Energy Company (MidAmerican) wind energy project in Palo Alto County, Iowa (the Project). *Mathis v. Iowa Utilities Board*, 934 N.W.2d 423, 425 (Iowa 2019). The Project consists of 170 turbines. *Id.* at 424. Each turbine has a capacity of two megawatts (MW). *Id.* The overall capacity of the Project is up to 340 MW of energy. *Id.*

If the Board were to declare that a certificate was required for the Project, then MidAmerican would have had to submit an application for a certificate. Iowa Code §

476A.3. Once an application is received, the Board schedules and holds a public hearing on the application. *Id.* § 476A.4; *but see id*. § 476A.15 (the Board could waive the public hearing requirement if it determined that the public interest would not be adversely affected).

The certificate of public convenience, use and necessity would have been required for the Project if the Project was a "facility" within the meaning of Iowa Code § 576A.1(5). A "facility" means "any electric power generating plant or a combination of plants at a single site, owned by any person, with a total capacity or twenty-five megawatts of electricity or more . . . ." *Id.* § 576A.1(5). Thus, the issue the Board needed to resolve was whether the Project met the definition of a facility.

On February 2, 2018, the Board issued its declaratory order, finding:

> The Board has ruled on the issue presented by Petitioners on several prior occasions, beginning with its order in *Zond Development Corporation*, Docket Nos. DRU-97-5 and DRU-97-6. In *Zond*, the Board found that "facility" "refers to the wind turbines connected to a common gathering line." *Zond*, "Declaratory Ruling" (November 6, 1997). On multiple occasions the Board has confirmed the gathering line standard as its interpretation of "facility." *See e.g.*, *MWW Holdings, LLC and Storm Lake Power Partners I, LLC*, "Order Granting Waiver," Docket No. WRU-2015-0001-3700 (February 6, 2015) ("[I]f the capacity of turbines connected to a single gathering or feeder line is less than 25 MW of nameplate capacity, there is no facility as defined in Iowa Code § 476A.1(5)."); *MidAmerican Energy Company*, "Declaratory Order," Docker No. DRU-03-3 (June 6, 2003) ("[T]he term 'facility' refers to the wind turbines connected to a common gathering line at a single site.")

> The Petitioners request that the Board reconsider its prior decisions on this issue and find that the Project meets the definition of a facility even though it will have less than 25 MW of capacity on any gathering line. However, Petitioners have presented no compelling justification to overturn this well-established Board precedent, nor have Petitioners distinguished the facts and circumstances surrounding the Project from any of the other wind energy projects that the Board has considered when finding that the term "facility" refers to the wind turbines connected to a common gathering line at a single site. Further, the Board issued the *Zond* decision on November 6, 1997. Since that decision, the Legislature has not taken action to modify

2

> the statutory language or otherwise addressed the Board's interpretation. Nor has any court addressed the issue.
>
> For the foregoing reasons, the Board reaffirms its long-standing determination that the term "facility" is measured by the nameplate generating capacity of the wind turbines connected to a single gathering line.

*In re Bertha Mathis and Stephen Mathis*, No. DRU-2017-0003, 2018 WL 741219 (Iowa Utilities Board Feb. 2, 2018). Therefore, the Board found that a certificate of public convenience, use and necessity was not required and it did not need to hold a public hearing on the Project.

On February 5, 2018, Solomon Mathis and Stephen Mathis filed a petition for judicial review in the Iowa District Court for Palo Alto County pursuant to Iowa Code § 17A.19. *Mathis*, 934 N.W.2d at 426. On July 3, 2018, the district court affirmed the Board's declaratory order. *Id.* On July 10, 2018, Solomon Mathis and Stephen Mathis appealed the district court's order and the Iowa Supreme Court retained the appeal. *Id.* On May 3, 2019, the Iowa Supreme Court affirmed the Board. *Id.* at 433. The Iowa Supreme Court concluded:

> As a court of generalists, not energy specialists, we are unable to say with confidence that the common-gathering-line standard is superior to all other tests for when a wind project should be deemed a single site or facility. What we can say is that compared to the standard advanced by the Mathises, it is more consistent with the underlying statutory language and more in line with the legislature's policy goals. Further, it is supported by a longstanding IUB administrative interpretation, apparent legislative acquiescence in that interpretation, and the legislature's endorsement of a similar standard in a different wind-energy statute. For the foregoing reasons, we affirm the judgment of the district court.

*Id.* at 432–33.

Solomon Mathis asserts that shortly after the Iowa Supreme Court's decision, she submitted a request to the Board for the gathering lines layout of the Project so she could determine that each gathering line in the Project had less than a 25 MW capacity. Doc.

3

No. 30 at 5. She claims that the Board replied by stating it had no documents responsive to her request. *Id.*

On July 12, 2019, Solomon Mathis filed a complaint in this court against defendants, the members of the Board, requesting injunctive relief. *See* Doc. No. 1. Her complaint alleges defendants, in their official capacities, violated the Ninth Amendment and Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983 by failing to hold a public hearing for a certificate of public convenience, use and necessity for the Project. Doc. No. 1 at 4. Defendants then filed their motion to dismiss, arguing, in part, that this court does not have subject matter jurisdiction over Solomon Mathis' claim because a ruling in Solomon Mathis' favor would require this court to overrule the Iowa Supreme Court's decision. *See* Doc. No. 5.

In response to defendants' motion to dismiss, Solomon Mathis filed a motion to amend her complaint. *See* Doc. No. 21. Her amended complaint was meant to clarify that she was not seeking federal review of the Iowa Supreme Court's decision and that she was also seeking monetary relief. *See* Doc. No. 30. Solomon Mathis stated that her claim is based on the Board's lack of factual support that the Project actually has less than 25 MW of capacity on each gathering line. *Id.* at 4. She asserts that the capacity of the Project is 340 MW and, therefore, a certificate of public convenience, use and necessity was required and the Board should have held a public hearing. *Id.*

Defendants did not resist granting leave to amend but noted in a response that "the proposed amendments in no manner or respect negate Defendants' previously asserted grounds for dismissal and, consequently, the amendment is futile." Doc. No. 27 at 2. Defendants then went on to expound their argument why the amended complaint warranted dismissal. *Id*. Chief Magistrate Judge Kelly K.E. Mahoney granted the motion to amend, finding that "the parties' arguments related to the motion to dismiss . . . can be considered with substitution of the amended complaint." Doc. No. 29. Solomon Mathis then filed a reply (Doc. No. 31) addressing the issues raised in defendants' response.

4

### III. APPLICABLE STANDARDS

*A. Rule 12(b)(1)*

Rule 12(b)(1) provides for a pre-answer motion to dismiss "for lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). As the Eighth Circuit Court of Appeals has explained:

> "The existence of subject-matter jurisdiction is a question of law that this court reviews de novo." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011). The party seeking to invoke federal jurisdiction . . . carries the burden, which may not be shifted to another party. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010).

*Jones v. United States*, 727 F.3d 844, 846 (8th Cir. 2013); *accord Key Med. Supply, Inc. v. Burwell*, 764 F.3d 955, 961 (8th Cir. 2014) (review is *de novo*). Dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may be permissible on the basis of a defense or exception to jurisdiction. *See, e.g.*, *Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013).

Where a party limits its attack to the face of the complaint, the attack is a "facial challenge" to subject matter jurisdiction. *Jones*, 727 F.3d at 846 (citing *BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 680 (8th Cir. 2002)). On a "facial challenge," "'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Id.* (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). Those protections include treating the complainant's factual allegations as true and dismissing only if it appears beyond a doubt that the complainant can prove no set of facts in support of its claim that would entitle it to relief. *Osborn*, 918 F.2d at 729 & n.6.

By contrast, on a "factual challenge," where a party makes a factual challenge to the district court's jurisdiction pursuant to Rule 12(b)(1), "'no presumptive truthfulness attaches to the [complainant's] allegations, and the existence of disputed material facts

5

will not preclude [the court] from evaluating . . . the merits of the jurisdictional claims.'" *Iowa League of Cities v. EPA*, 711 F.3d 844, 861 (8th Cir. 2013) (quoting *Osborn*, 918 F.2d at 729–30 & n. 6). Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the *issue to determine whether in fact subject matter jurisdiction exists*.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (emphases added) (citation omitted). The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004). A plaintiff carries the burden of establishing subject matter jurisdiction. *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006); *Hoekel v. Plumbing Planning Corp.*, 20 F.3d 839, 840 (8th Cir. 1994) (per curiam), *Nucor Corp. v. Neb. Pub. Power Dist.*, 891 F.2d 1343, 1346 (8th Cir. 1989).

Here, the parties did not address the question of whether defendants are making a facial challenge or factual challenge to subject matter jurisdiction. Based on my review of the parties' filings, however, I find that the challenge is a facial one. Specifically, defendants have not attacked the factual basis for the court's jurisdiction. Instead, defendants argue that the *Rooker-Feldman* doctrine serves to deprive the court of jurisdiction to hear the dispute. Because *Rooker-Feldman* deprives a court of jurisdiction even if all of the factual allegations regarding the court's jurisdiction are true, I find that the nature of defendants' jurisdictional attack is a facial challenge. *See Neuman v. Iowa*, No. CV16-2054-LRR, 2016 WL 6661166, at *4 (N.D. Iowa Nov. 10, 2016).

### B.  *Rule 12(b)(6)*

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While *factual* "plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*,

7

680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927 (N.D. Iowa 2014).

### C. *Section 1983 Claims*

Solomon Mathis brings her claims pursuant to 42 U.S.C. § 1983, which provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). Section 1983, however, provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393–94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "[O]ne cannot go into court and claim a violation of [Section] 1983—for [Section] 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, Section 1983 serves as a vehicle for plaintiffs to vindicate rights that exist under other bodies of law such as the Constitution and statutes. 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271.

In assessing a complaint by a pro se plaintiff, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quotation and citation omitted). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to pro se complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Despite the liberal construal of pro se complaints, the pro se plaintiff "still must allege sufficient

8

facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d at 914). Thus, pro se litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Id.* (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

## IV. ANALYSIS

At the outset, I note the pending motion has taken an unusual course. Solomon Mathis filed a complaint, defendants filed a motion to dismiss, Solomon Mathis filed a motion to file an amended complaint and defendants filed a response stating that they did not resist the filing of an amended complaint. However, that response also raised arguments that the amended complaint should be dismissed. The court granted the motion to amend and then Solomon Mathis filed a reply responding to the arguments raised in defendants' previous filing. Accordingly, although this procedure is nonstandard, I find that defendants arguments in favor of dismissing both the complaint and the amended complaint are properly before me and plaintiff has fully responded to those arguments.

### A. Rooker-Feldman *Doctrine*

Defendants argue that this court lacks subject matter jurisdiction over Solomon Mathis' claims "because ruling on this matter would require this Court to overrule a decision of the Iowa Supreme Court and the *Rooker-Feldman* doctrine precludes subject matter jurisdiction in such cases." Doc. No. 5-1 at 1. Defendants argue that ultimately Solomon Mathis contends she is entitled to a public hearing held by the Board because the Project is a facility under Iowa Code § 476A.1(5) and, therefore, requires a certificate from the Board. *Id.* at 6. Defendants claim that, in order to find in Solomon Mathis' favor, I would be required to review and reverse a decision of the Iowa Supreme Court, which the *Rooker-Feldman* doctrine prohibits. *Id.* at 7.

Solomon Mathis responds that she is not seeking review of the Iowa Supreme Court's decision. Doc. No. 6 at 1. Instead, she argues that her claim is based on "the

9

absence of documentation to support the 25 MW gathering line rule allowing MidAmerican Energy Company to build this Wind Facility without regard to any and all aspects of my property and the externalities that come with a Wind Turbine located within five tenths, 5/10, of a mile from my home." *Id.*

### 1. *Law*

"The 'basic theory' of the *Rooker–Feldman* doctrine is 'that only the United States Supreme Court has been given jurisdiction to review a state-court decision,' so federal district courts generally lack subject-matter jurisdiction over 'attempted appeals from a state-court judgment.'" *Friends of Lake View Sch. Dist. No. 25 v. Beebe*, 578 F.3d 753, 758 (8th Cir.2009) (quoting 18B Charles A. Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure § 4469.1, at 97, 101 (2d ed.2002)). The doctrine is narrow. *Id.* The "doctrine 'is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced.'" *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil Corp.*, 544 U.S. at 293. The *Rooker-Feldman* doctrine occupies only a "narrow ground" and should be invoked only under "limited circumstances." *Id.* at 284, 291. "Variously interpreted in the lower courts, the doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress'[s] conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts. . . ." *Id.* at 283.

"One way to determine whether a federal claim is based on a complaint of injury caused by a state-court judgment, and thus an appeal of such judgment, is to determine if the state and federal claims are 'inextricably intertwined.'" *Robins v. Ritchie*, 631 F.3d 919, 925 (8th Cir. 2011) (quoting *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983)). Claims are "inextricably intertwined" when "federal

10

claims can succeed only to the extent the state court wrongly decided the issues before it." *Id.* In other words, a federal claim is "inextricably intertwined" with a state court claim, if the relief sought in the federal action "would effectively reverse the state court decision or void its ruling." *Bechtold v. City of Rosemont*, 104 F.3d 1062, 1065 (8th Cir. 1997) (citation omitted).

The Eighth Circuit has expressly cautioned against a state court loser seeking victory against his adversary in a subsequent § 1983 action in federal court:

> Litigants can choose whether to pursue . . . claims in state or federal court. *Charchenko v. City of Stillwater*, 47 F.3d 981, 984 (8th Cir.1995). Once a party has litigated in state court, however, he "cannot circumvent *Rooker–Feldman* by recasting his or her lawsuit as a [section] 1983 action." *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir.1997). In other words, if a litigant has raised and lost claims in state court, he may not recast those claims under section 1983 and try again. He must follow the appellate procedure through the state courts and seek review before the Supreme Court. *See Rooker [v. Fid. Trust Co.*, 263 U.S. 413, 415–16 (1923)].

*Prince v. Ark. Bd. Exam'rs in Psychol.*, 380 F.3d 337, 340 (8th Cir. 2004); *see also Dodson v. University of Ark. For Med. Sciences*, 601 F.3d 750, 754 (8th Cir. 2010).

### *2. Discussion*

The Iowa Supreme Court affirmed the Board's conclusion that "facility" in Iowa Code § 476A.1(5) refers to wind turbines connected to a common gathering line. *See Mathis*, 934 N.W.2d at 427 ("Our focus here is on the narrow question of whether the legislature gave interpretive authority to the [Board] to determine what is a 'single site' within the meaning of Iowa Code section 476A.1(5)."). The Iowa Supreme Court did not determine that the Project actually has less than 25 MW of capacity on every gathering line. Neither did the Board. Solomon Mathis' and Stephen Mathis' petition for declaratory order requested that the Board determine that "facility" in Iowa Code § 476A.1(5) "is the combination of turbines in the entire wind energy project" rather than just those wind turbines connected to a common gathering line. *See* Petition for

11

Declaratory Order, *In re Bertha Mathis and Stephen Mathis*, No. DRU-2017-0003 (Iowa Utilities Board Dec. 5, 2017). Thus, the *Rooker-Feldman* doctrine does not apply to the question of whether Solomon Mathis' constitutional rights were violated by the alleged lack of evidence supporting the Board's determination that each gathering line in the Project has less than 25 MW capacity.

By contrast, the *Rooker-Feldman* doctrine does prohibit any claim that a "facility," as that term is used in Iowa Code § 476A.1(5), is the combination of all the wind turbines in the Project rather than a common gathering line. Federal relief on this issue would effectively reverse the Iowa Supreme Court's decision. To the extent Solomon Mathis contends that her constitutional rights were violated because of the Board's interpretation of the term "facility" in Iowa Code § 476A.1(5), defendants' motion to dismiss will be granted.

## B.  *Ninth Amendment Claim*

Solomon Mathis argues that her Ninth Amendment right was violated by the Board not having evidence to support a determination that each gathering line in the Project actually has less than 25 MW capacity. The Ninth Amendment states: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. "The Ninth Amendment is a rule of interpretation rather than a source of rights." *Froehlich v. State Dep't. of Corrs.*, 196 F.3d 800, 801 (7th Cir. 1999). Federal courts appear to have unanimously rejected § 1983 claims premised on the Ninth Amendment. *See, e.g.*, *Strandberg v. City of Helena*, 791 F.2d 744, 748–49 (9th Cir. 1986); *Carter v. Rysh*, No. 17-CV-1061, 2018 WL 3802082 at *3–4 (D. Minn. July 13, 2018); *McLeod-Lopez v. Algarin*, 603 F. Supp. 2d 330, 338–39 (D.P.R. 2009); *Rynn v. Jaffe*, 457 F. Supp. 2d 22, 26 (D.D.C. 2006); *Bussey v. Phillips*, 419 F. Supp. 2d 569, 586 (S.D.N.Y. 2006); *Clynch v. Chapman*, 285 F. Supp. 2d 213, 218–19 (D. Conn. 2003). I agree with the other courts that have addressed this issue. Section 1983 claims must be "based on a specific constitutional

guarantee" and the Ninth Amendment protects no independent right. *Strandberg*, 791 F.2d at 748. To the extent Solomon Mathis contends that the Board violated her Ninth Amendment right, defendants' motion to dismiss will be granted.

### C. *Fourteenth Amendment Claim*

Solomon Mathis' remaining claim is that her Fourteenth Amendment right was violated by the Board not having evidence to support a determination that each gathering line in the Project actually has less than 25 MW capacity. Specifically, she argues that the Board has deprived her of "life, liberty, or property, without due process of law," by not allowing her to have input into the Project. U.S. Const. amend. XIV; Doc. No. 6 at 3. She argues that there are negative health effects of living in close proximity of wind turbines. *Id.* at 4. She also argues that she should "have a say about industrial development surrounding my home." *Id.* She argues that her property value has diminished as a result of the Project. *Id.* at 5. She also complains about the environmental impact of wind turbines. *Id.* at 7.

Defendants respond that Solomon Mathis has not established a liberty or property interest protected by the due process clause. Doc. No. 5-1 at 8. They argue that the failure to hold a public hearing is not a deprivation of Solomon Mathis' life, liberty or property. *Id.* at 9. They also argue that Solomon Mathis has received all process that was due or failed to take advantage of the available process. *Id.* They claim she was afforded all due process because the Board ruled on her petition for declaratory judgment and she was able to appeal their decision through the Iowa court system. *Id.* Defendants also argue that Solomon Mathis does not allege that the Project at issue exceeds the 25 MW per gathering line rule and nor does she cite to any provision of law that would either require a utility to file material with the Board if the gathering line is less than 25 MW, or provide the Board with the authority to determine if a common gathering line is less than 25 MW. Doc. No. 27 at 4.

13

A pro se complaint must be "liberally construed." *Erickon v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Giving Solomon Mathis' amended complaint the most liberal construction, it makes a procedural due process claim on the narrow issue of whether the Board was required by Iowa state law to hold a public hearing on the issuance of a certificate of public convenience, use and necessity. "To establish a procedural due process violation, a plaintiff must demonstrate that [she] has a protected property or liberty interest at stake and that [she] was deprived of that interest without due process of law." *Hopkins v. Saunders*, 199 F.3d 968, 975 (8th Cir. 1999) (citing *Marler v. Mo. State Bd. of Optometry*, 102 F.3d 1453, 1456 (8th Cir. 1996)). A protected property interest exists where a plaintiff has a "legitimate claim of entitlement" to a benefit that is derived from a source such as state law. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation created by state laws or policies . . . ." *Wilkinson v. Austin*, 5445 U.S. 209, 221 (2005) (citations omitted).

Here, Solomon Mathis cannot demonstrate that the Board deprived her of any property or liberty interest without due process. Iowa Code § 476A.4 states that the Board should hold a public hearing once the Board receives an application for a certificate of public convenience, use and necessity. Soloman Mathis identifies no state law or other authority that requires the Board to hold a public hearing without an application for a certificate. Solomon Mathis does not allege that the Board received such an application in this case. Therefore, the Board did not deprive Solomon Mathis of any property interest she may have had in a public hearing.

This can be seen by reviewing the sequence of events leading to the present case. Iowa Code § 17A.9 authorizes persons to "petition an agency for a declaratory order as to the applicability to specified circumstances of a statute, rule, or order within the primary jurisdiction of the agency." Solomon Mathis' and Stephen Mathis' petition for a declaratory order requested that the Board determine that "facility" in Iowa Code §

14

476A.1(5) "is the combination of turbines in the entire wind energy project" rather than just those wind turbines connected to a common gathering line. Petition for Declaratory Order, *In re Bertha Mathis and Stephen Mathis*, No. DRU-2017-0003 (Iowa Utilities Board Dec. 5, 2017). The Board issued a declaratory order, declining to adopt Solomon Mathis' and Stephen Mathis' argument. *See In re Bertha Mathis and Stephen Mathis*, 2018 WL 741219, at *1. This was all the process to which they were due. Even if the Board would have agreed with their argument, no statute or authority required the Board to then hold a public hearing on the Project. Ruling in their favor would have meant only that MidAmerican would have had to file a certificate of public convenience, use and necessity. At that point, Iowa law would have required that the Board either hold a hearing or waive a hearing if it determined that the public interest would not be adversely affected. *See* Iowa Code §§ 476A.4, 476A.15.

Solomon Mathis has failed to state a claim on which relief can be granted. She cannot demonstrate that she has a protected property or liberty interest that the Board deprived her of without due process of the law. Due process under Iowa's regulatory scheme requires the Board, upon receiving an application for a certificate, to hold a hearing or make a determination that waiver of the hearing was appropriate. Here, Solomon Mathis fails to allege that an application for a certificate was submitted to the Board and the Board then took no action. Further, she has identified no authority that would create for her a liberty or property interest to a public hearing held by the Board.

### D. Other Issues

When broadly construed, I find that Solomon Mathis' amended complaint asserts the claims discussed above. I also note that her amended complaint essentially argues that the wind turbines in the Project are a nuisance and should not have been built. Specifically, in the "Statement of the Claim" section of her amended complaint, Solomon Mathis states, "[b]ecause of the negligence of the IUB ignoring its obligation to residents living within the wind facility, we have had no formal opportunity to express our concerns

15

about the safety, health effects, environmental impact and other externalities of this large wind installation being built in close proximity to rural residents." Doc. No. 30 at 5. To the extent Solomon Mathis' issue is with the impact of the Project, this type of claim cannot be brought against defendants. Solomon Mathis cites to no law demonstrating that the Board had any decision-making authority in the development, approval and construction of the Project. Nor does the Board own or operate the Project. Solomon Mathis points to nothing demonstrating that the Board had any legal ability or obligation to hold a public hearing or make a determination as to the suitability of the Project.

Further, Solomon Mathis has named defendants only in their official capacities. However, § 1983 monetary damage claims against defendants acting in their official capacities are barred, "either by the Eleventh Amendment or because in these capacities they are not 'persons' for § 1983 purposes." *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 (1989)). Therefore, she is unable to recover monetary damages against these defendants even if her claims had merit.

## V. CONCLUSION

For the reasons set forth herein:

1. Defendants' motion (Doc. No. 5) to dismiss is **granted** in its entirety.

2. All claims asserted by plaintiff Bertha Solomon Mathis are **dismissed** and the Clerk of Court shall **close this case**.

**IT IS SO ORDERED.**

**DATED** this 2nd day of July, 2020.

_____
Leonard T. Strand, Chief Judge